UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

AMPARO RODRÍGUEZ-RIVERA,

    Claimant,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Respondent.

Civil No. 08-1994 (JAF)

**OPINION AND ORDER**

Claimant, Amparo Rodríguez-Rivera, petitions this court under 42 U.S.C. § 405(g) to review the decision of Respondent, Commissioner of Social Security ("Commissioner"), denying Claimant's application for disability benefits. (Docket No. 2.) Claimant files a memorandum challenging Commissioner's denial (Docket No. 15), and Commissioner files a memorandum defending same (Docket No. 16-2).

**I.**

**Factual and Procedural History**

We derive the following facts from the parties' filings (Docket Nos. 2; 11; 15; 16-2) and the record in this case ("R.") (Docket No. 10). Claimant was born on December 3, 1957. (R. at 99.) She completed the third grade. (R. at 320.) She worked from 1979 to February 2003 as a fragrance-packing line operator at a perfume factory. (R. at 89.) On February 15, 2003, Claimant stopped working due to symptoms caused by her physical and mental impairments.

1    (R. at 87.)  Claimant applied for Social Security benefits on December 12, 2003.  (R. at 99.)

2    Her coverage for said benefits expired on June 30, 2008.  (Id.)

3           On September 24, 2004, Commissioner determined that Claimant was not disabled and,

4    accordingly, was not entitled to disability benefits under the Social Security Act.  (R. at 38-44.)

5    On November 5, 2004, Claimant requested reconsideration of the determination.  (R. at 49.)

6    Commissioner obliged and, on June 9, 2005, affirmed the denial.  (R. at 52-56.)

7           On June 27, 2005, Claimant requested a hearing before an administrative law judge

8    ("ALJ") (R. at 30), which took place before ALJ Theodore W. Grippo, on June 11, 2007 (R. at

9    23-26; 317).  Claimant attended the hearing with counsel and testified regarding her alleged

10   disability. (R. at 317-33.)  Two medical experts also testified at Claimant's hearing, Dr. Jorge

11   Hernández-Denton regarding Claimant's physical impairments (R. at 317, 333-35) and

12   Dr. Ramón Alonso-Santiago regarding Claimant's mental impairment (R. at 317, 335-38).

13   Finally, vocational expert Luis Serrano-Vega testified as to Claimant's past work and vocational

14   profile.  (R. at 317, 338-40.)

15          Dr. Hernández-Denton testified that Claimant shows several severe conditions: "chronic

16   lumbar condition" with limitations as to lumbar movement and flexibility; "chronic cervical

17   pain" with slightly limited cervical movement; heart "palpitations" with some evidence of valve

18   collapse; and "superficial varicose veins in her legs and lower extremities."  (R. at 333-34.)  He

19   opined that Claimant's physical impairments, while severe, do not meet or equal the severity

20   of any listed impairment (R. at 334), though he disagreed with a consulting physician who

concluded that Claimant can still perform "medium" work (R. at 335). He explained that, based on Claimant's testimony and on the relevant medical evidence, Claimant can only lift a maximum of five pounds occasionally, given her cervical and lumbar conditions. (Id.)

Dr. Alonso-Santiago, having reviewed "the entirety of the claimant's file," testified that Claimant's severe mental impairment meets a listed impairment. (R. at 338.) Specifically, he found that hers meets the "requirements of category 12.04, affective disorder, in the criteria A-1, articles a, c, d, e, f, g, h, i."[1] (Id.) He also testified regarding her symptoms vis-à-vis "criteria B-1," but most of said testimony was not captured on the record. (See id. (showing that testimony regarding B1 criteria was "inaudible").)

Finally, Serrano-Vega classified Claimant's past work as "medium" and "non-skilled," and he opined that Claimant's vocational profile showed her able to perform medium, nonskilled work. (R. at 338-39.)

Also before the ALJ were medical records from Claimant's treating physicians and from consulting physicians who evaluated her impairments upon examination of Claimant and/or her medical records. According to the records, Claimant regularly saw three treating physicians: generalist Dr. Héctor Toro-Deniz, cardiologist Dr. Oscar Kidd, and psychiatrist Dr. Lillian

---

[1] The cited provisions describe a "[m]edically documented persistence, either continuous or intermittent," of a depressive syndrome characterized by: anhedonia or pervasive loss of interest in almost all activities; sleep disturbance; psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; thoughts of suicide; and hallucinations, delusions, or paranoid thinking. 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, 12.04A1.

Civil No. 08-1994 (JAF) -4-

Serrano-García.[2] In addition, consulting physicians opined as to the nature and severity of her impairments, including their effect on her capacity to work.

Dr. Toro-Deniz treated Claimant from 1998 through at least 2007. (See R. at 149-90, 295-307.) Beginning February 2003, the point at which Claimant became eligible for social security benefits, Dr. Toro-Deniz recorded a number of Claimant's ailments, including leg, neck, and back pain; depression; peripheral vascular disease; hypoglycemia; mitral valve prolapse; and iron deficiency. (See R. at 172-90, 295-307.) Included within Dr. Toro-Deniz' records is the result of a lower-extremities venous study, conducted by Dr. José Nadal-Lluberes on March 21, 2003, showing that Claimant suffers from "insufficient bilateral popliteo-tibialis sinuses and perforators." (R. at 173.) Also during that time period, from 2001 to 2003, Claimant received treatment from Dr. Kidd. (R. at 191-208.) The only records from Dr. Kidd during Claimant's benefits-eligible years show treatment for heart palpitations. (R. at 201-02.)

Dr. Serrano-García treated Claimant from 2002 through at least 2007. (R. at 209-19, 308-14.) Rather than progress notes taken during treatment, Dr. Serrano-García submitted three psychiatric medical reports—dated April 5, 2004; March 17, 2005; and June 5,

---

[2] Dr. María de Lourdes Telmont indicated that Claimant had another treating physician, Dr. Luisa Rivera-Chinchilla. (R. at 221.) The only record submitted by Dr. Rivera-Chinchilla is a general medical report dated March 11, 2005; the report is mostly illegible and is written alternatingly in English and untranslated Spanish. (See R. at 259-61.) Dr. Rivera-Chinchilla appears to have written that she examined Claimant on the date of the report but that the date of her first examination was June 14, 2005—three months after the report was written. (See R. at 259.) Nevertheless, we make out that Dr. Rivera-Chinchilla described Claimant's prognosis as "poor" and opined that Claimant is limited in her ability to walk, lift, stand, and sit. (See R. at 261.)

2007—summarizing her treatment of Claimant's major depression. (Id.) Each report documents manifestations of Claimant's severe depressive disorder, including her inability to interact with family and friends; psychomotor retardation; somatic complaints; feelings of worthlessness; poor memory, concentration, judgment, and insight; inability to independently carry out activities of daily living; and inability to cope with any stress. (See, e.g., R. at 209-13.) Dr. Serrano-García named but generally did not document examples of these manifestations. (See R. at 209-19, 308-14.)

Claimant also received two sets of evaluations, one in 2004 and the other in 2005, from non-treating physicians who examined her and/or her medical records. Following an evaluation on July 2, 2004, internist Dr. María de Lourdes Telmont reported the following diagnostic impressions: severe depression, noting Claimant's partial hospitalization for two weeks in 2003 and her complaints of hallucinations and suicidal ideas; rapid heartbeat; mitral valve prolapse, noting Claimant's chest pain that improves with medication; scanty small leg varicosities; and a history of migraines, anemia, and hypoglycemia. (See R. at 221-29.) Dr. Telmont also opined, despite Claimant's noted physical impairments, that Claimant has no limitation as to lifting, carrying, sitting, standing, hearing, walking, and speaking. (R. at 223.) Following an evaluation on August 27, 2004, psychiatrist Dr. José Berríos-Merced reported that Claimant suffers from recurrent major depression but that her prognosis is "good." (See R. at 230-38.) He noted that her symptoms improve with medication and that she shows some interest in activities of daily living and in socializing. (Id.)

Based on a review of Claimant's medical records, psychiatrist Dr. Luis Sánchez-Raffucci completed a psychiatric review technique and a mental residual functional capacity assessment on September 20, 2004. (R. at 241-58.) He documented a depressive disorder marked by Claimant's depressed mood and somatic preoccupations. (R. at 244.) He concluded that said disorder limited Claimant's functioning as follows: moderate restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration. (R. at 251; see also R. at 255-56.) He also opined that Dr. Serrano-García's conclusions as to the severity of Claimant's mental impairment were unsupported by other sources on the record. (R. at 257.)

As to the 2005 evaluations, the record contains a general medical report from Dr. Rivera-Chinchilla, see supra note 2; a psychiatric evaluation from psychiatrist Dr. Mabel Dávila-Sandoz (R. at 262-67); and an evaluation from internist Dr. Rene Gómez-Gómez (R. at 268-76). Dr. Dávila-Sandoz diagnosed Claimant with a "depressed adjustment disorder," noting that Claimant performs various activities of daily living but does not socialize. (R. at 267.) She also described Claimant's thinking, judgment, insight, memory, concentration, and attention as normal, acceptable, and functional and noted that Claimant denied having had hallucinations or suicidal ideas. (Id.) Dr. Gómez-Gómez concluded that Claimant's main limitation stemmed from her mental impairment but that she also displayed symptoms of mitral valve prolapse;

migraine headaches; and cervical and lumbar strain, resulting in difficulty bending, stooping, squatting, and crawling. (R. at 270.)

Finally, internist Dr. Idalia Pedroza-López completed a physical residual functional capacity assessment, in which she concluded that Claimant's primary physical impairment is lower back pain. (See R. at 278-85.) She concluded that Claimant has no functional limitation due to physical impairment outside of exertional limitations (see id.); as to these, she found that Claimant can lift only up to fifty pounds occasionally; can carry or lift only up to twenty-five pounds frequently; and can stand, walk, and sit, with normal breaks, for only a total of six hours in an eight-hour workday (R. at 279). In relevant terminology, discussed below, this constitutes a capacity to perform "medium" work.

The ALJ issued his decision denying Claimant disability benefits on August 29, 2007. (R. at 15-22.) He found, inter alia, that Claimant suffers from three severe impairments, namely low back pain, mitral valve prolapse, and recurrent major depression; that Claimant does not have an impairment or combination of impairments that meets or medically equals a listed impairment, discussed below; that Claimant has the residual functional capacity ("RFC") to perform the full range of medium work; and that Claimant is not disabled, as defined by the Social Security Act. (R. at 17-22.)

On October 10, 2007, Claimant sought review of the ALJ's decision from the Appeals Council (R. at 7-8), which denied review on June 30, 2008 (R. at 4-6). On September 4, 2008, Claimant filed the present petition in this court seeking review of the ALJ's decision. (Docket

No. 2.) Claimant filed a memorandum of law on December 20, 2009 (Docket No. 15), and Commissioner filed a memorandum of law on February 16, 2010 (Docket No. 16-2).

## II.

## **Standard of Review**

An individual is disabled under the Social Security Act ("Act") if she is unable to do her prior work or, "considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d). The Act provides that "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." Irlanda-Ortíz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (internal quotation marks omitted) (quoting Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

We must uphold Commissioner's decision if we determine that substantial evidence supports the ALJ's findings, even if we would have reached a different conclusion had we reviewed the evidence de novo. Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). In reviewing a denial of benefits, the ALJ must consider all evidence in the record. 20 C.F.R. § 404.1520(a)(3). Credibility and "[c]onflicts in the evidence are . . . for the [ALJ] — rather than the courts — to resolve." Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987). We reverse the ALJ only if we find that he derived his

Civil No. 08-1994 (JAF) -9-

decision "by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

### III.

### Analysis

Claimant argues that the ALJ erred in assessing the severity of her physical and mental impairments and the effect of these on her ability to perform her past work. (Docket No. 15 at 7-18.) Claimant argues specifically that the ALJ disregarded, without explanation, relevant conclusions of both consulting and treating physicians, including those of the medical experts who testified at her hearing before the ALJ. (Id.) We analyze these arguments below with respect to each ALJ determination unfavorable to Claimant, namely that (1) among her various physical conditions, only three constitute severe impairments; (2) none of the three severe impairments, nor any combination thereof, meets or equals a listed impairment; and (3) Claimant's RFC permits her to perform her past relevant work.

**A.   Combination of Severe Impairments**

Of the many ailments from which Claimant suffers, the ALJ found that only three are severe: low back pain, mitral valve prolapse, and recurrent major depression. (See R. at 17.) This constitutes a finding by the ALJ that Claimant's other impairments do not "significantly limit [her] physical or mental ability to do basic work activities." § 404.1521(a). Specifically, the ALJ concluded that Claimant's other physical impairments do not affect her ability to walk,

Civil No. 08-1994 (JAF)                                                                                                    -10-

stand, sit, lift, push, pull, reach, carry, or handle. § 404.1521(b). On review, we must determine whether substantial evidence supports this conclusion.

At the ALJ hearing, when asked by her counsel what conditions she claims, Claimant reported that she has "[l]ower back spasms" and resulting pain and physical limitations. (R. at 322-23.) She also reported that she became forgetful, weak, and tired, due in part to her lower back pain. (R. at 323.) When asked what her general physician treats her for, she replied "[b]ack pain."[3] (R. at 324.) In addition, she reported her treatment for depression (id.) and for heart palpitations (R. at 326). Asked where she feels the most pain in her body, she answered, "[t]he waist."[4] (R. at 329.)

A physician also testified at Claimant's ALJ hearing and listed several physical conditions, namely lumbar and cervical pain, heart palpitations, and superficial varicose veins. (See R. at 333-34.) As to the varicose veins, Dr. Hernández-Denton mentioned them only once in passing and without reference to the physical effect of same. (See R. at 333-35.)

Our review of the remainder of the record reveals evidence of physical ailments Claimant suffers other than low back pain and mitral valve prolapse. (See, e.g., R. at 172 (leg pain), 173 (lower-extremity venous insufficiency), 270 (migraine headaches and cervical pain).) Nevertheless, nothing on the record indicates that these other conditions affect Claimant's

---

[3] Asked thereafter whether Dr. Toro-Deniz treated her for anything else, Claimant replied, but her reply was documented as "inaudible" in the ALJ hearing transcript. (See R. at 324.)

[4] Asked thereafter whether she felt pain anywhere else in her body, Claimant replied, but again her reply was documented as "inaudible" in the ALJ hearing transcript. (See R. at 329.)

ability to perform basic work activities. (See, e.g., id.) In addition, Claimant's testimony at her ALJ hearing indicates that she is physically affected mostly, if not solely, by her lower back pain and by her heart palpitations. (See R. at 322-29; see also R. at 278-85.) In sum, we find that substantial evidence supports the ALJ's finding that these, along with Claimant's depression, are the only severe impairments from which Claimant suffers.

### B.   Meet or Medically Equal a Listed Impairment

The ALJ concluded that none of Claimant's severe impairments, nor any combination thereof, meets or medically equals a listed impairment. (R. at 17-18.) On review, we must determine whether substantial evidence supports that conclusion.

#### 1.   Lower Back Pain

The ALJ offered no explanation as to why Claimant's lumbar condition meets no listed impairment. (See R. at 17-18.) The Code of Federal Regulations ("Code") lists the spinal conditions to which we compare Claimant's condition. See 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, 1.04. This listing requires that a claimant display an enumerated spinal disorder, one of which is degenerative disc disease, plus (1) evidence of nerve-root compression accompanied by sensory or reflex loss and, if the lower back is involved, a positive straight-leg raising ("SLR") test, id. at 1.04A; (2) spinal arachnoiditis, id. at 1.04B; or (3) lumbar spinal stenosis resulting in the inability to ambulate effectively,[5] id. at 1.04C.

---

[5] The Code defines the "inability to ambulate effectively" as the inability to walk "without the use of a hand-held assistive device." 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, 1.00B2b.

There is no evidence that Claimant suffers from spinal arachnoiditis, and there is evidence that Claimant had no limitation as to walking (see, e.g., R. at 271 (describing Claimant's gait as "normal").) While Claimant suffers from lumbar pain, there is no evidence on the record of nerve-root compression or of sensory or reflex loss.[6] Thus, we find that substantial evidence supports the ALJ's determination that Claimant's lower back pain does not meet a listed impairment.

### 2. Mitral Valve Prolapse

The ALJ again offered no explanation as to why Claimant's mitral valve prolapse meets no listed impairment. (See R. at 17-18.) The Code lists the cardiovascular impairments to which we compare Claimant's condition. See 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, 4.00. The listed impairments are: chronic heart failure, id. at 4.02; ischemic heart disease, id. at 4.04; recurrent arrhythmias, resulting in uncontrolled, recurrent episodes of cardiac syncope or near syncope, despite prescribed treatment, id. at 4.05; symptomatic congenital heart disease, id. at 4.06; heart transplant, id. at 4.09; aneurysm of aorta or major branches, id. at 4.10; chronic venous insufficiency, id. at 4.11; and peripheral arterial disease, id. at 4.12.

Claimant's mitral valve prolapse comes closest to the description in section 4.05, regarding recurrent arrhythmias. But the medical records include no mention of cardiac syncope or near syncope, and there is evidence that Claimant's heart palpitations are controlled by her

---

[6] When Dr. Gómez-Gómez evaluated Claimant, she diagnosed degenerative disc disease and reported that Claimant was unable to perform an SLR test. (R. at 268-76.)

medication (see, e.g., R. at 223). We, therefore, find that substantial evidence supports the ALJ's determination that Claimant's mitral valve prolapse does not meet a listed impairment.

### 3.     Recurrent Major Depression

Section 404.1520a describes a particular technique the ALJ must apply to assess a claimed mental impairment. See 20 C.F.R. § 404.1520a(a) (describing need for special technique). In determining that a claimant suffers from a severe mental impairment, an ALJ must make a specific finding as to the degree of limitation in each of the functional areas.[7] The ALJ deciding whether a claimant's severe depression meets or medically equals a listed mental disorder uses those same ratings. At this second application of the ratings, the ALJ need only properly determine that a claimant's severe depression does not result in extreme—or "marked"—limitation in at least two of the four the functional areas.[8]

---

[7] An ALJ deciding whether a claimant suffers from a severe mental impairment first must determine whether the claimant has a medically determinable impairment and, if so, must both "specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment" and "rate the degree of functional limitation resulting from the impairment." § 404.1520a(b). The ALJ must so rate as to four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. § 404.1520a(c)(3). The ratings for the first three areas are based on a five-point scale (none, mild, moderate, marked, and extreme); the rating for the fourth area is based on a four-point scale (none, one or two, three, four or more). § 404.1520a(c)(4). If the ALJ rates the limitation in the first three functional areas as "none" or "mild" and in the fourth area as "none," the ALJ will generally conclude that the impairment is not severe. § 404.1520a(d)(1). Otherwise, the ALJ must continue the analysis by determining whether the impairment meets or is equivalent in severity to a listed mental disorder and, if so, assessing the claimant's RFC. § 404.1520a(d)(2), (3). The ALJ's "written decision must incorporate the pertinent findings and conclusions based on the technique." § 404.1520a(e)(2).

[8] To determine that a claimant's depression neither meets nor is equivalent in severity to the listed mental disorder, the ALJ has to find that the claimant's impairment does not match the criteria in either (1) paragraphs A and B of a particular section in the Code, 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, 12.04; or (2) paragraph C of same, id. See 20 C.F.R. §§ 404.1520a(d)(2), 404.1525. For a

Civil No. 08-1994 (JAF) -14-

In the case at hand, the ALJ rated Claimant's limitation as to each category and used those ratings to find that Claimant suffers from a severe depressive disorder but that it did not meet or medically equal the depressive disorder listed in the Code. (R. at 17-18.) He found, specifically, that Claimant has "mild" difficulties with activities of daily living and social functioning; "moderate" difficulties with concentration, persistence, or pace; and no episodes of decompensation. (R. at 18.) He reiterated later his opinion that Claimant experiences "no more than moderate" limitations in any of the first three categories and "none" in the fourth and final. (R. at 21.) On review, we need only determine whether substantial evidence supports this latter iteration of his finding, specifically that Claimant's limitation is not "marked" in at least two of the four categories. See supra note 8 and accompanying text.

We find that the record, on the whole, contains sufficient evidence supporting the finding that Claimant experiences "no more than moderate" limitations in the first three categories and "none" in the fourth. (See, e.g., R. at 230-38, 251, 267.) And we find that the ALJ adequately addressed the disparity between his finding and that of Drs. Serrano-García and Alonso-Santiago. (See R. at 20-21.) With the ALJ's ratings in mind, and with no evidence that

---

claimant's impairment to match the criteria in paragraph B, the ALJ has to determine that the claimant's limitation is "marked" in at least two of the four areas of functional capacities. See 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, 12.04B. For a claimant's impairment to match the criteria in paragraph C, the ALJ has to determine that the claimant experienced (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) a current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. See 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, 12.04C.

Claimant's condition meets the criteria outlined in paragraph C, as defined <u>supra</u> note 8, we find that substantial evidence supports the ALJ's finding that Claimant's mental impairment does not meet a listed impairment.

### 4. **Combination of Impairments**

Having searched the listed impairments, and based on our review of the record, we also find that substantial evidence supports the ALJ's determination that no other listed impairment is closely analogous to any one or combination of Claimant's impairments. <u>See</u> § 404.1526(b)(2)-(3).

### C. **Residual Functional Capacity and Ability to Perform Past Relevant Work**

To conclude, finally, that Claimant is not disabled, the ALJ first had to assess Claimant's RFC and then use that assessment to determine whether Claimant could perform her past relevant work or, if not, nevertheless adjust to other work. <u>See</u> 20 C.F.R. §§ 404.1520(e), 404.1520a(d)(3), 404.1545, 404.1560–.1569a. Section 404.1545 guides the ALJ's assessment of RFC, which is defined as "the most [one] can do despite [one's] limitations." § 404.1545(a)(1). The ALJ must use "all of the relevant medical and other evidence" to assess RFC. § 404.1545(a)(3); <u>see also</u> § 404.1545(c) (describing evidence relevant to mental limitations). Section 404.1529 guides the ALJ's evaluation of symptoms and their effect on a claimant's capacity for work. <u>See, e.g.</u>, § 404.1529(c), (d)(4).

Referencing relevant regulations, the ALJ found that Claimant can perform a full range of medium work. (<u>See</u> R. at 18-22.) In so deciding, the ALJ considered Claimant's physical

symptoms and concluded that Claimant "should not do heavy lifting and carrying." (R. at 20.) He concluded that her "pain is not of such frequency intensity or duration as to be disabling" and noted that, while "heavy lifting or carrying may worsen her condition," she should "otherwise . . . function adequately." (Id.)   The ALJ addressed his deviation from the conclusions of Dr. Hernández-Denton, stating that "the objective evidence does not support his conclusions and [that] greater weight is given to the evaluations of record." (R. at 20.) Having reviewed the record, we find the assessment that Claimant can perform a full range of medium work supported by substantial evidence. (See, e.g., R. at 223, 278-85.)

As to mental symptoms, the ALJ reviewed the medical evidence on file and concluded that Claimant had established no "psychoneurotic problem which would impair the effectiveness and predictability of [her] behavior to be incompatible with work activities." (R. at 21.) The ALJ addressed his deviation from the conclusions of Drs. Serrano-García and Alonso-Santiago, stating that "the evidence of record does not substantiate" same. (R. at 20-21.) Having reviewed the record, we find this assessment supported by substantial evidence. (See, e.g., R. at 230-38, 255-58, 267.)

Next, the ALJ had to determine whether Claimant, given her particular RFC, can perform past relevant work. See §§ 404.1520(f), 404.1560(b). A vocational expert may be used to aid this determination. § 404.1560(b)(2). The ALJ found Claimant able to perform her past relevant work. (R. at 21-22.) Upon review of the vocational expert's testimony (R. at 338-39), and given our finding as to the ALJ's assessment of Claimant's RFC, supra, we find that

Civil No. 08-1994 (JAF) -17-

substantial evidence supports the ALJ's finding that Claimant can perform her past relevant work. We thus uphold the ALJ's attendant conclusion that Claimant is not disabled.

## IV.

## Conclusion

In view of the foregoing, we hereby **AFFIRM** Commissioner's determination. We **DENY** Claimant's petition (Docket No. 2) and **DISMISS WITH PREJUDICE** all claims therein.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 31st day of March, 2010.

s/José Antonio Fusté
JOSE ANTONIO FUSTE
Chief U.S. District Judge